IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN COLLISION & | ) Civil Action |
|    AUTOMOTIVE CENTER, INC., | ) No. 11-cv-06947 |
| RONALD B. GALATI and | ) |
| TIFFANY N. GALATI, | ) |
| | ) |
|               Plaintiffs | ) |
| | ) |
|       vs. | ) |
| | ) |
| WINDSOR-MT. JOY MUTUAL | ) |
|    INSURANCE COMPANY, | ) |
| | ) |
|            Defendant | ) |

*     *     *

APPEARANCES:

> Howard G. Silverman, Esquire
>    On behalf of Plaintiffs
>
> Eric R. Brown, Esquire
> Martin A. Durkin, Esquire
>    On behalf of Defendant

*     *     *

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

This matter is before the court on the Motion to Dismiss of Defendant, Windsor-Mt.Joy Mutual Insurance Company filed on November 14, 2011. For the reasons expressed below, I grant the motion to dismiss and dismiss plaintiffs' Complaint.

JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1333, which provides that district courts shall have original and exclusive jurisdiction over any civil case of admiralty or maritime jurisdiction.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1441 because this action was removed from the Court of Common Pleas of Lancaster County, Pennsylvania, which is within this judicial district.

PROCEDURAL HISTORY

Plaintiffs Fleetway Capital Corporation[1], American Collision & Automotive Center, Inc., Ronald B. Galati, and Tiffany N. Galati initiated this civil action on December 3, 2010 by filing a Praecipe to Issue Writ of Summons in the Court of Common Pleas of Lancaster County, Pennsylvania against defendant Windsor-Mount Joy Mutual Insurance Company.  Thereafter, following a Rule to File Complaint filed by defendant, plaintiffs filed a five-count Complaint[2] in the Lancaster County state

---

[1]    By Order dated and filed January 3, 2012, I approved the voluntary dismissal of plaintiff Fleetway Capital Corporation.

[2]    The Complaint is attached to the Notice of Removal as Exhibit "A". The Complaint arises from a dispute concerning whether defendant, as an insurer of a boat damaged in a fire, is required to pay plaintiffs for the fire loss.

In their Complaint, plaintiffs assert Pennsylvania state-law causes of action for Breach of Contract (Count I), Bad Faith (Count II), Fraud (Count III), Negligent Misrepresentation (Count IV), and Conversion (Count V).

action on October 17, 2011.

Defendant timely removed the matter to this court by Notice of Removal filed November 7, 2011.  On November 14, 2011 the defendant filed the within motion to dismiss.[3]

On November 28, 2011 Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss was filed.[4]  On December 7, 2011 the Reply of Defendant Windsor-Mt.Joy Mutual Insurance Company to Plaintiffs' Response to Defendant's Motion to Dismiss was filed ("Defendant's Reply Brief").

<u>STANDARD OF REVIEW</u>

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on

---

[3]    Defendant's motion to dismiss was accompanied by Exhibits "A" through "D" and by a Brief in Support of the Motion to Dismiss of Defendant, Windsor-Mt.Joy Mutual Insurance Company ("Defendant's Brief").

[4]    Plaintiffs' brief in opposition ("Plaintiffs' Brief") was accompanied by three attached documents: (1) a Marine Purchase Agreement; (2) Defendant's Answer with New Matter to Plaintiff's Complaint, which answer responded to a Complaint filed by non-party Ronald L. Galati against defendant on October 22, 2007 in case number 002774, October Term 2007 in the Court of Common Pleas of Philadelphia County, Pennsylvania ("Philadelphia County Action"); and (3) the Complaint filed by Ronald L. Galati in the Philadelphia County Action.

a motion to dismiss, the court relies on the complaint, attached
exhibits, and matters of public record, including other judicial
proceedings.  <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d. Cir.
2008).

      Except as provided in Federal Rule of Civil
Procedure 9, a complaint is sufficient if it complies with
Rule 8(a)(2), which requires "a short and plain statement of the
claim showing that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) does not require heightened
fact pleading of specifics, but "only enough facts to
state a claim to relief that is plausible on its face." <u>Twombly</u>,
550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d  at 949.[5]

      In determining whether a plaintiff's complaint is
sufficient, the court must "accept all factual allegations as
true, construe the complaint in the light most favorable to the
plaintiff, and determine whether, under any reasonable reading,
the plaintiff may be entitled to relief." <u>Fowler</u>, 578 F.3d

---

    [5]    The opinion of the United States Supreme Court in <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009),
states clearly that the "facial plausibility" pleading standard set forth in
<u>Twombly</u> applies to all civil suits in the federal courts.  <u>Fowler v. UPMC</u>
<u>Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

    This showing of facial plausibility then "allows the court to draw
the reasonable inference that the defendant is liable for the misconduct
alleged," and that the plaintiff is entitled to relief.  <u>Fowler</u>, 578 F.3d at
210 (quoting <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

    As the Supreme Court explained in <u>Iqbal</u>, "[t]he plausibility
standard is not akin to a 'probability requirement,' but it asks for more than
a sheer possibility that the defendant acted unlawfully." <u>Iqbal</u>,
556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

-4-

at 210 (citing <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or bare-bones allegations" will not survive a motion to dismiss, <u>Fowler</u>, 578 F.3d at 210, a complaint may not be dismissed "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  <u>Phillips</u>, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. <u>Fowler</u>, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. <u>Id.</u> at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  <u>Id.</u> at 211 (quoting <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on its "judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." <u>Iqbal</u>, 556 U.S. at 680, 129 S.Ct. at 1949-1950, 178 L.Ed.2d at 884-885. A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

<u>FACTS</u>

Based upon the averments in plaintiffs' Complaint, which I must accept as true under the foregoing standard of review when considering a motion to dismiss, the pertinent facts are as follows.

Plaintiff American Collision and Automotive Center, Inc. ("American Collision") is a Pennsylvania corporation. Plaintiffs Ronald B. Galati and Tiffany N. Galati are individuals who reside in Philadelphia, Pennsylvania.  Ronald B. Galati is an officer and shareholder of American Collision.[6]

---

[6]      Complaint, ¶¶ 2-4 and 7.

Defendant Windsor-Mount Joy Mutual Insurance Company ("Windsor") is a Pennsylvania corporation.[7]

On May 23, 2006 plaintiff American Collision entered into a Lease Agreement, Guaranty, and Security Agreement with former plaintiff Fleetway Capital under which various assets of American Collision were pledged as security for the financing of a thirty-three foot Chaparral boat ("boat").[8]

On May 31, 2006 plaintiff Ronald B. Galati's father, Ronald L. Galati[9], executed a purchase agreement for the boat. Ronald B. Galati, Tiffany N. Galati, and American Collision all provided funds for the down payment on the boat.

Also on May 31, 2006 defendant issued its Watercraft Policy ("Policy") to "Ronald Galati"[10], which insured the boat against loss caused by fire.  Former plaintiff Fleetway Capital Corporation is listed as a loss payee on the Policy.[11]

On December 22, 2006 a fire at the Waterfront Marina in Summers Point, New Jersey damaged boats, including the Chapparral boat insured under the Policy issued by defendant.  The next day,

---

[7]     Id., ¶ 5.

[8]     Id., ¶ 8.

[9]     To avoid confusion between these similar names, in this Opinion I refer to plaintiff's father Ronald L. Galati by his full name or as Mr. Galati.  I refer to plaintiff Ronald B. Galati by his full name.

[10]    The insurance policy did not specify whether the policy was issued to plaintiff Ronald B. Galati or his father, Ronald L. Galati.

[11]    Complaint, ¶ 12.

Ronald L. Galati learned that the boat was damaged and met with investigators from the Summers Point prosecutors office. Ronald L. Galati cooperated with the New Jersey authorities investigating the cause and origin of the fire.[12]

On January 24, 2007 defendant's investigator, Robert Gibble, sent defendant a letter, which indicated that the New Jersey prosecutor, Chuck DeFebbo, believed that the fire was caused by a vagrant.[13]

On March 21, 2007 Ronald L. Galati filed a proof of loss with defendant.[14]  On March 27, 2007 defendant denied Ronald L. Galati's claim for insurance coverage on the boat. On March 28, 2007 Mr. Galati requested all evidence and facts which supported defendant's decision not to honor the claim submitted by him.[15]

On March 29, 2007 another of defendant's investigators, Michael Walters, sent defendant a letter, indicating that Mr. DeFebbo believed the fire had been set by an unidentified homeless person.[16]

---

[12]   Id., ¶¶ 14-17.

[13]   Id., ¶ 21.

[14]   Plaintiffs did not file a proof of loss on behalf of themselves.

[15]   Id., ¶¶ 22 and 23.

[16]   Id., ¶ 24.

On April 4, 2007 defendant refused to provide the requested evidence and documents upon which it relied in denying Ronald L. Galati's claim.  Defendant contended that Mr. Galati's claim file, which included police reports relied upon by defendant, was proprietary.[17]

On April 6, 2007 Mr. Galati sent a letter to defendant seeking confirmation that defendant denied his claim because defendant determined that Mr. Galati intentionally set the fire. Mr. Galati also forwarded information to defendant regarding another marina fire and a string of deliberately set fires at other businesses.[18]

On May 9, 2007 defendant reiterated its decision not to accept Ronald L. Galati's claim.  On July 5, 2007 Mr. Galati forwarded additional information to defendant regarding an additional suspected arson in the immediate vicinity of the Waterfront Marina.  However, on July 18, 2007 defendant again reiterated its decision not to honor Mr. Galati's claim.[19]

On October 12, 2007 defendant paid a cleanup and disposal fee of $1,281.16 to the Waterfront Marina.  Defendant

---

[17]    Id., ¶¶ 25-27.

[18]    Id., ¶ 28.

[19]    Id., ¶¶ 29-31.

further released the remains of the boat to the Waterfront Marina for salvage value to offset the Waterfront Marina storage fees.[20]

On October 22, 2007 Ronald L. Galati filed a Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania ("Philadelphia County Action"), alleging that he owned the boat and that defendant had improperly denied his claim for insurance benefits.[21]

Defendant initially responded to Mr. Galati's Complaint in the Philadelphia County Action by admitting that Ronald L. Galati was the owner of the boat.  However, at trial defendant changed its position and contended that Ronald L. Galati did not own the boat.[22]

Defendant took this position despite testimony indicating that there was no fraud in the application process for the Policy and that the only issue regarding the payment of the claim was the issue of arson.  Additionally, a few months before the fire at the Waterfront Marina, defendant had paid Mr. Galati for a small claim for damage to the boat's outdrive caused by a submerged object.[23]

---

[20]    Id., ¶ 32.

[21]    Id., ¶ 33.

[22]    Id., ¶ 34.

[23]    Id., ¶¶ 34 and 35.

Prior to trial in the Philadelphia Action defendant represented to Ronald L. Galati that it had provided him with all information to its investigation, including all information related to ownership of the boat.  However, at trial defendant produced evidence from its lead investigator, Michael Walters which it had not provided during discovery.

Defense counsel, Martin A. Durkin, Esquire, stated that he was unaware that Ronald L. Galati had not been provided with this evidence.  However, contrary to Attorney Durkin's asser-tions, he knew that Mr. Walters had not provided the information to Mr. Galati.  Specifically, a letter dated March 9, 2009 from Mr. Walters to Attorney Durkin indicates that various letters were being withheld from Mr. Galati.[24]

Despite this knowledge, defendant represented to the Philadelphia Court of Common Pleas that it had discovered "new information", which supported its position that defendant Ronald L. Galati was not the owner of the boat.  Accordingly, after conclusion of the trial, defendant sought to amend its answer to the Philadelphia County Complaint in order to contest the assertion that Mr. Galati was the owner of the boat.[25]

However, the information on which defendant relied upon to amend its answer was not in fact new.  Rather, the information

---

[24]    Id., ¶ 36.

[25]    Id., ¶ 37.

-11-

consisted of facts known to defendant from the inception of the Philadelphia County Action, but which defendant had concealed from Mr. Galati until the time of trial.  In fact, during trial defendant's claim manager and corporate designee admitted that a valid insurance policy existed and that defendant had no reason to dispute Ronald L. Galati's ownership of the boat.[26]

Specifically, defendant's corporate designee and president both conceded that Mr. Galati's policy had not been cancelled after his claim was denied, nor was it canceled as of the time of trial.  Additionally, defendant's corporate designee testified that the only question concerning whether Mr. Galati was entitled to a claim, was whether the boat damage was caused by Mr. Galati.  Despite these admissions, defendant allowed its counsel to make misrepresentations to the Philadelphia Court of Common Pleas which were directly at odds with defendant's own testimony.[27]

On June 18, 2009 the jury in the Philadelphia County Action returned a verdict in favor of defendant.  Specifically, the jury found that plaintiff (Ronald L. Galati) did not meet his burden of proof in establishing that he had a "pecuniary

---

[26]    Id., ¶¶ 38 and 39.

[27]    Id., ¶¶ 40 and 41.

-12-

(insurable) interest in the boat". However, the jury also found that defendant improperly denied Mr. Galati's claim.[28]

On July 28, 2009 former plaintiff Fleetway Capital Corporation submitted a demand for payment of insurance benefits as the loss payee of the policy. On July 29, 2009 defendant acknowledged the claims by Fleetway Capital Corporation and Ronald L. Galati.[29]

On July 15, August 11 and August 28, 2009 plaintiffs requested defendant to answer the following questions: (1) Who owns the boat?; (2) Who is the named insured?; (3) Who has an insurable interest in the boat?; (4) Who has submitted a claim and, to the extent that a claim was submitted by someone other than Ronald L. Galati, what is the status of the claim?; and (5) Was the prior claim for hitting the submerged object paid to Ronald L. Galati, and, if so, why did Windsor pay the claim to him if he did not own the boat?[30]

However, defendant refused to pay the claims of either Fleetway Capital Corporation or Ronald L. Galati. In addition, defendant has refused to answer plaintiffs' five questions.[31]

---

[28] Id., ¶ 42.

[29] Id., ¶ 46; Exhibit 18.

[30] Id., ¶¶ 47.

[31] Id., ¶ 48.

DISCUSSION

Breach of Contract

In Count One plaintiff asserts a cause of action for breach of contract.  Defendant contends that plaintiffs' breach of contract claim is barred by a suit limitation clause in the insurance policy, which provides that any action against defendant must be brought within one year after whatever caused the loss or damage.

Plaintiffs contend that the suit limitations clause does not bar their breach-of-contract claim because the limitations period was tolled by defendant's fraudulent concealment of its intention to dispute the ownership of the boat.  Moreover, plaintiffs contend that the suit limitation clause in the Policy does not apply to them because defendant provided the policy only to Ronald L. Galati and not to them. Finally, plaintiffs contend that the suit limitation clause is not enforceable because defendant has not shown that it was prejudiced by the late notice of plaintiffs' claim.

Article XI of the Policy provides that "Should you wish to bring legal action against us you must do so within (1) one year after whatever caused the loss or damage".[32]

---

[32]     Defense Exhibit "A", Watercraft Policy, page 4 of 11.  Plaintiffs' breach of contract claim is based on the Policy.  Therefore, the Policy may be considered in the adjudication of defendant's motion to dismiss.  See Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

-14-

Here, plaintiffs allege that the loss -- specifically the burning of the boat -- occurred on December 22, 2006. Plaintiffs' Praecipe to Issue Writ of Summons was filed on December 3, 2010, well outside the suit limitation period.

However, plaintiffs contend that defendant intentionally concealed its intention to dispute that Ronald L. Galati was the owner of boat during the course of the Philadelphia County litigation.  Accordingly, plaintiffs contend they did not receive notice that defendant had breached the Policy until June 11, 2009.

However, even assuming the doctrine of fraudulent concealment serves to toll the suit limitations clause in the Policy, plaintiffs still are barred by the suit limitation clause because they filed the Praecipe to Issue Writ of Summons on December 3, 2010, -- nearly sixteen months after June 11, 2009.

Plaintiffs attempt to avoid this result by contending that the one-year-suit-limitation clause in the policy is not enforceable against them because defendant has not established that it was prejudiced by plaintiffs' delay in making their claim.  Further, plaintiffs contend that the one-year suit limitation does not apply to them because "defendant did not provide the policy to [p]laintiffs, but provided it only to Ronald L. Galati."[33]

---

[33]    Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, page 11.

However, an insurance provider is not required to demonstrate prejudice to enforce a suit limitation clause. Hospital Support Services, Ltd. v. Lumbermens Mutual Casualty Company, 889 F.2d 1311, 1316 (3d Cir. 1989).[34]

Moreover, plaintiffs do not provide any authority for their contention that defendant's failure to provide plaintiffs with a copy of the Policy renders certain provisions of it unenforceable.

Therefore, even if the doctrine of fraudulent concealment tolls the suit limitation provision of the Policy until June 11, 2009, plaintiffs' breach of contract claim is still untimely under the terms of the Policy. Therefore, I grant defendant's motion to dismiss to the extent it seeks dismissal of plaintiffs' breach of contract claim[35].

---

[34]   Accordingly, plaintiffs reliance on Brakeman v. Potomac Insurance Company, 472 Pa. 66, 371 A.2d 193 (1977), is misplaced.  In Brakeman, the Pennsylvania Supreme Court held that a time limitation on filing a notice of claim was unenforceable absent a showing of prejudice by the insurer. 472 Pa. at 72, 371 A.2d at 196.

However, "the Brakeman rule does not apply to limitation of suit clauses." Hospital Support Services, Ltd., 889 F.2d at 1316.

[35]   Because the one-year suit limitation clause in the Policy clearly bars plaintiffs' breach of contract claim, I dismiss Count One with prejudice. I conclude that leave to amend would be futile.  See  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

-16-

<u>Bad Faith</u>

In Count Two, plaintiff asserts a claim for bad faith pursuant to 42 Pa.C.S. § 8371.[36]

Defendant contends that plaintiffs' bad faith claim is barred by a two-year statute of limitations.  Moreover, defendant contends that plaintiffs do not have standing to pursue a bad faith claim because Ronald L. Galati already litigated a bad faith claim against defendant in the Philadelphia County Action. Defendant contends that plaintiffs cannot re-litigate those issues pursued by Ronald L. Galati and that to the extent that plaintiffs had a separate ownership interest, they waived those rights by allowing Mr. Gallati to pursue his lawsuit on his own.

Plaintiffs contend that the doctrine of fraudulent concealment tolls the statute of limitations on their bad faith claim.  Additionally, plaintiffs contend that they have standing to assert a bad faith claim because defendant has refused to pay any insurance benefits to them.

---

[36]     Title 42 of the Pennsylvania Consolidated Statutes Section 8371 provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1)   Award interest on the amount of the claim from the date the claim was made by the insured in the amount equal to the prime rate of interest plus 3%.
>
> (2)   Award punitive damages against the insurer.
>
> (3)   Assess court costs and attorney fees against the insurer.

-17-

The Commonwealth of Pennsylvania has established a statutory remedy for bad faith on the part of insurance companies.  42 Pa.C.S. § 8371.  In order to recover on a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.  Klinger v. State Farm Mutual Insurance Company, 115 F.3d 230, 233 (3d Cir. 1997).

The Supreme Court of Pennsylvania has established a two-year statute of limitations for statutory insurance bad faith claims brought pursuant to 42 Pa.C.S. § 8371.  Ash v. Continental Insurance Company, 932 A.2d 877, 885 (Pa. 2007).  The statute of limitations begins to run when coverage is initially denied. Adamski v. Allstate Insurance Company, 738 A.2d 1033, 1038 (Pa.Super 1999).

"[C]ontinuing denials of coverage do not give rise to separate acts of bad faith."  CRS Auto Parts, Inc. v. National Grange Mutual Insurance Company, 645 F.Supp.2d 354, 365 (2009) citing Adamski, 738 A.2d 1040.

However, "separate acts of bad faith, distinct from the initial denial of coverage" constitute an independent basis for a bad faith claim and therefore trigger a new limitations period. See CRS Auto Parts, Inc., 645 F.Supp.2d at 372.

Conduct by an insurer that is "calculated not toward prolonging an investigation into an insured's claim, but rather toward winning a lawsuit" does not constitute distinct bad faith conduct.  Id. at 373.  Accordingly, "discovery violations" by an insurer do not give rise to an independent bad faith claim.  Id.

Instead, when considering whether conduct of an insurer constitutes an independent act of bad faith, a court should consider whether the alleged bad faith conduct "stem[s] solely and precisely from the original denial of coverage".  Id.

Therefore in order to determine when the statute of limitations period began to run on plaintiffs' bad faith claim, it is necessary to consider the conduct that plaintiffs allege to be in bad faith.  Here, plaintiffs contend that defendant acted in bad faith in fourteen instances.[37]

Plaintiffs' allegations of bad faith can be grouped into three categories: (1) defendant's failure to investigate and refusal to pay the policy benefits on Mr. Galati's claim[38]; (2) defendant's conduct during the course of litigation in the Philadelphia County Action[39]; and (3) defendant's failure to

---

[37]    See Complaint, ¶ 59.

[38]    See Complaint, ¶ 59(a), (b), (c), (l), (m) and (n).

[39]    See Complaint, ¶ 59(d), (e), (f), (g) and (h).

respond to plaintiffs' request for information after the
Philadelphia County Action.[40]

        With respect to the first category of conduct, the
statute of limitations on plaintiffs' bad faith claim began on
March 27, 2007 when defendant denied Ronald L. Galati's claim for
insurance proceeds for fire damage to the boat.  <u>Adamski</u>,
738 A.2d at 1038.

        Because plaintiffs did not file the within action until
December 3, 2010, plaintiffs' bad faith claims concerning the
failure to investigate and the refusal to pay policy benefits on
Mr. Galati's claim are barred by the statute of limitations.

        Moreover, defendant's conduct during the litigation in
the Philadelphia County Action is subject to the same statute-of-
limitations period.  Plaintiffs allege that defendant acted in
bad faith by "withholding evidence during the litigation and
trial...in order to prevent Ronald L. Galati and Plaintiffs from
discovery, prior to trial, Defendant's intention to raise a
defense of 'ownership' and[/]or 'lack of insurable interest'".[41]

        However, "discovery violations" by an insurer do not
give rise to an independent bad faith claim.  <u>CRS Auto Parts,
Inc.</u>, 645 F.Supp.2d at 373.  Additionally, conduct by an insurer

---

        [40]    <u>See</u> Complaint, ¶ 59(i).  Subsections (j) and (k) of paragraph 59
do not contain factual allegations and therefore are not considered.  <u>See</u>
<u>Iqbal</u>, 556 U.S. at 678-679, 129 S.Ct. at 1949-1950, 178 L.Ed.2d at 884-885.

        [41]    Complaint, ¶ 59(e).

that is "calculated not toward prolonging an investigation into an insured's claim, but rather toward winning a lawsuit" does not constitute distinct bad faith conduct.  Id. at 373.

Therefore, I conclude that defendant's conduct during the Philadelphia County Action is subject to the same statute of limitations period that began to run upon defendant's initial refusal to pay policy benefits on Ronald L. Galati's claim. Accordingly, plaintiffs' claim that defendant acted in bad faith during the course of litigation is also barred by the statute of limitations.[42]

---

[42]   Plaintiffs' contention that the doctrine of fraudulent concealment serves to toll the statute of limitations is not persuasive.

The doctrine of fraudulent concealment provides that a defendant may not invoke the statute of limitations if, through fraud or concealment, he causes the plaintiff to "relax his vigilance or deviate from his right of inquiry into the facts." Fine v. Checcio, 582 Pa. 253, 271, 870 A.2d 850, 860 (Pa. 2005).

However, the doctrine of fraudulent concealment only tolls the statute of limitations until a person of "reasonable diligence" would uncover the facts upon which his recovery may be based. Id. at 271.

Here, the doctrine of fraudulent concealment is not applicable. Plaintiffs' bad faith claim pertains to defendant's denial of coverage for loss of the boat--which was not concealed from plaintiffs.  Indeed, plaintiffs were well aware that on March 27, 2007 defendant denied Ronald L. Galati's claim for coverage.

Moreover, even if defendant concealed its intention to raise the issue of "ownership" and "insurable interest" of the boat until trial in the Philadelphia County Action, such conduct would not toll the statute of limitations for plaintiffs' bad faith claim.  If plaintiffs, rather than Ronald L. Galati, had an insurable interest in the boat, "reasonable diligence" on the part of plaintiffs would have uncovered those facts.

In fact, the Complaint alleges that plaintiffs' "each provided funds for a down payment on the boat and had an insurable interest in the boat".  (Complaint, ¶ 10).  Therefore, even if defendant concealed its intention to raise the issue of whether Ronald L. Galati had an insurable interest in the boat, plaintiffs were aware of the facts upon which their

(Footnote 42 continued):

Likewise, plaintiffs' allegations concerning defendant's conduct after the Philadelphia County Action do not state a timely bad faith claim.  Specifically, plaintiffs allege that defendant has refused to respond to plaintiffs' requests for information about the identity of the insureds, the owner of the boat and the prior payment made to Ronald L. Galati.[43]  Plaintiffs allege that on July 15, 2009, and on August 11 and 28, 2009, they sent requests to defendant seeking such information.

However, these requests clearly "stem solely and precisely from the original denial of coverage".  CRS Auto Parts, Inc. 645 F.Supp.2d at 372.  Therefore, this conduct is subject to the same limitations period which commenced following defendant's initial refusal to pay policy benefits on Ronald L. Galati's claim.[44]

------------

(Continuation of footnote 42):

recovery would be based.  That is, plaintiffs knew when the boat burned; knew when Mr. Galati's claim was denied; and knew that they had an insurable interest in the boat.

[43]     Complaint, ¶ 59(i).

[44]     In addition, even though plaintiffs' requests for information were filed within two years of December 3, 2010, when plaintiffs Praecipe to Issue Writ of Summons was filed, defendant's failure to respond to these requests does not establish a viable bad faith claim.

In order to recover on a bad faith claim, a plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy.  Klinger v. State Farm Mutual Insurance Company, 115 F.3d 230, 233 (3d Cir. 1997).

Here, plaintiffs' requests for information on July 15, 2009, and on August 11 and 28, 2009 (and former plaintiff Fleetway Capital Corporation's claim for benefits submitted on July 28, 2009) were all outside the one-year suit limitation clause, discussed above.  Therefore, defendant had a reasonable basis not to respond to plaintiffs' requests for information.

Because plaintiffs' bad faith time is not timely, I
grant defendant's motion to dismiss Count Two of plaintiff's
Complaint with prejudice.[45]

<u>Fraud and Negligent Misrepresentation</u>

In Counts Three and Four, plaintiffs assert claims for
fraud and negligent misrepresentation.

Defendant contends that these claims fail because
plaintiffs do not allege that defendant made any representations
to them. Rather, plaintiffs allege that the representations were
made to Ronald L. Galati. Additionally, defendant contends that
plaintiffs' fraud and negligent misrepresentation claims are
barred by the gist-of-the-action doctrine.

Plaintiffs contend that they have alleged viable fraud
and negligent misrepresentation claims because defendant's
misrepresentations to Ronald L. Galati were intended to be relied
upon by plaintiffs. Plaintiffs also contend that their fraud and
negligent misrepresentation claims are not barred by the gist-of-
the-action doctrine because plaintiffs may plead in the
alternative, and if plaintiffs are not insured under the policy,

Accordingly, even if this conduct is within the statute of limitations, the
allegations do not support a bad faith claim.

[45]    Because I have concluded that plaintiffs' bad faith claim is
barred by the statute of limitations, I dismiss Count Two with prejudice. I
conclude that leave to amend would be futile. <u>See</u> <u>Shane v. Fauver</u>, 213 F.3d
113, 115 (3d Cir. 2000).

Because I have granted defendant's motion to dismiss Count Two on
the basis of the statute of limitations, I do not address defendant's
contention that plaintiffs lack "standing" to assert a bad faith claim.

they still have viable fraud claims.

In Pennsylvania to state a claim for fraud, a plaintiff must allege (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate result. Kurtz v. American Motorists Insurance Co., 1995 U.S.Dist. LEXIS 17417 at *3 (E.D.Pa. Nov. 21, 1995) (Hutton, J.) citing Scaife Co. v. Rockwell-Standard Corporation, 446 Pa. 280, 285 A.2d 451, 454 (1971).

To establish a claim for negligent misrepresentation, a plaintiff must show (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known of the falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on misrepresentation. Tran v. Metropolitan Life Insurance Company, 408 F.3d 130, 133 (3d Cir. 2005) citing Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 561 (1999).

For both claims of fraud and negligent misrepresen-tation, a misrepresentation "may be communicated directly to the recipient or indirectly to the recipient through a third party." Kurtz, 1995 U.S.Dist. LEXIS 17417 at *5.

Therefore, plaintiffs may assert viable fraud and

-24-

negligent misrepresentation claims based on allegations that
defendant made misrepresentations to Ronald L. Galati, rather
than to plaintiffs, provided defendant intended such misrepre-
sentations to be relied upon by plaintiffs.[46]

However, defendant also contends that plaintiffs' fraud
and negligent misrepresentation claims are barred by the gist-of-
the-action doctrine.

Under Pennsylvania law, the "gist of the action"
doctrine "is designed to maintain the conceptual distinction
between breach of contract and tort claims by precluding
plaintiffs from recasting ordinary breach of contract claims into
tort claims." CRS Auto Parts, Inc., 645 F.Supp.2d at 376
(internal quotations omitted).

Accordingly, when a plaintiff alleges that a defendant
committed a tort in the course of carrying out a contractual
agreement, a court must examine the claim and determine whether
the "gist or gravamen" of it sounds in contract or tort. Id. at
377.

---

[46]     In its reply brief, defendant concedes that a misrepresentation
may be actionable based upon statements made to third parties (Defendant's
Reply Brief, page 4).

Nevertheless, defendant contends that plaintiffs' allegation that
defendant intended plaintiffs to rely on the misrepresentation is not
plausible.

However, this contention does not provide a basis for dismissal.
Plaintiffs Ronald B. Galati and Tiffany N. Galati are the son and daughter of
Ronald L. Galati.  Therefore, drawing the required inferences in favor of
plaintiffs, it is plausible that defendant made misrepresentations to Ronald
L. Galati with the intent to induce plaintiffs to act to their detriment.

Therefore, the doctrine bars tort claims (1) that arise solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.  Id.

Accordingly, where the alleged misrepresentation or fraud concerns the performance of contractual duties, "then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties." eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 19 (Pa.Super. 2002).

However, where pre-contractual statements are the basis for a fraud-in-the-inducement claim or where the fraud concerns an act "collateral to and not interwoven with the terms of the parties contract", courts have been "less willing to bar the claims." CRS Auto Parts, Inc., 645 F.Supp.2d at 377-378.  But even pre-contractual statements cannot serve as a basis for an independent fraud claim if such statements "concern specific duties that the parties later outlined in the contract".  Id. at 378.

Here, plaintiffs' fraud and negligent misrepresentation claims arise solely from the Policy that defendant allegedly

refused to honor.  Accordingly, the duties allegedly breached by defendant were created and grounded in the contract itself.[47]

Moreover, plaintiffs do not contend that they were fraudulently induced into entering, nor do they seek to void, the Policy.  Rather, plaintiffs contend that they are entitled to the insurance benefits as provided by the Policy.  Therefore, all of plaintiffs' allegations of fraudulent conduct concern defendant's performance of the contract and are barred by the gist-of-the-action doctrine.[48]

Because plaintiffs' fraud and negligent misrepresen-tation claims are barred by the gist-of-the-actions doctrine, I grant defendant's motion to dismiss and dismiss Counts Three and Four with prejudice.[49]

---

[47]    For example, plaintiffs allege that defendant misrepresented that it had issued a valid policy to Ronald L. Galati but that defendant never intended to honor the Policy (See Complaint, ¶¶ 62-65).

The duty to honor the Policy is grounded in the contract itself. Therefore, it cannot provide a basis for a separate fraud claim.

[48]    Plaintiffs contend that they may plead fraud and breach of contract claims in the alternative and that, in the event plaintiffs were not insured under the Policy, the gist action doctrine would not bar their fraud and negligent misrepresentation claims.

While plaintiffs may plead in the alternative and seek mutually exclusive forms of relief, each cause of action must state a claim upon which relief can be granted.  Here, plaintiffs' fraud and negligent misrepresentation claims fail to state a claim upon which relief can be granted because the claims are based on the Policy and therefore barred by the gist of the action doctrine.

[49]    Because the alleged breach of duty is clearly derived from the Policy, I conclude that leave to amend would be futile.

<u>Conversion</u>

In Count Five, plaintiffs assert a claim for conversion.  Plaintiffs allege that on October 12, 2007, after the boat had burned, defendant paid a cleanup and disposal fee, and released the remains of the boat, to Waterfront Marina to offset the Waterfront Marina storage fees.[50]

Plaintiffs contend that by doing so, defendant treated the boat as its own property and therefore is liable for conversion.

Defendant contends that plaintiffs' conversion claim is barred by the statute of limitations.  Additionally, defendant contends that even if plaintiffs' conversion claim can proceed, plaintiffs are entitled only to the value of the remains, and not to the full value of the boat.

Plaintiffs contend that the doctrine of fraudulent concealment tolls the statute of limitations and therefore their claim for conversion is timely.

---

[50]     Complaint, ¶ 32.

In Pennsylvania the statute of limitations for conversion is two years.  42 Pa.C.S. § 5524(3).[51]

Here, the alleged conversion occurred on October 12, 2007.  Therefore, plaintiffs had until October 12, 2009 to file a claim for conversion.  Because the within action was not filed until December 3, 2010, plaintiffs' conversion claim is barred by the statute of limitations.

Plaintiffs contend that the limitations period is tolled by defendant's fraudulent concealment.  However, plaintiffs do not allege that defendant concealed, or that they were unaware, that the remains of the boat were released to Waterfront Marina.  The doctrine of fraudulent concealment only tolls the statute of limitations until a person of "reasonable diligence" would uncover the facts upon which his recovery may be based.  Fine v. Checcio, 582 Pa. 253, 271, 870 A.2d 850, 860 (Pa. 2005).

Therefore, the doctrine of fraudulent concealment is not applicable and plaintiffs' conversion claim is barred by the statute of limitations.

---

[51]     Title 42 of the Pennsylvania Consolidated Statutes Section 5524(3) provides that "An action for taking, detaining or injuring personal property, including actions for specific recovery thereof" must be commenced within two years.

CONCLUSION

For all the foregoing reasons, defendant's motion to dismiss is granted.  Accordingly, I dismiss Counts One through Five of plaintiffs' Complaint with prejudice.